# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

THREE DIGITAL DEVICES THAT ARE CURRENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF INVESTIGATION IN WASHINGTON, D.C. .

)
)
)
)
)
)

Case No. 22-sw-187

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1 through A-3, incorporated herein.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, 848; 18 U.S.C. §§ 924(c) and 924(j) | Drug trafficking offenses, Continuing Criminal Enterprise, Possession of a Firearm in Furtherance of a Crime of Violence/Drug Trafficking and Discharge of a Firearm in Furtherance of a Crime of Violence/Drug Trafficking Crime Causing Murder |

The application is based on these facts:

See Attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

_____
*Applicant's signature*

Heang Ly, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 06/16/2022 _____

_____
*Judge's signature*

City and state: _____ District of Columbia _____

Robin M. Meriweather, United States Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means       ☑ Original        ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THREE DIGITAL DEVICES THAT ARE<br>CURRENTLY IN THE CUSTODY OF THE<br>FEDERAL BUREAU OF INVESTIGATION<br>IN WASHINGTON, D.C. | )<br>)<br>)<br>)     Case No.  22-sw-187<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1 through A-3, incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____June 30, 2022_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Robin M. Meriweather_____ .
                                                                                                    *(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:      06/16/2022                         _____
                                                                                    *Judge's signature*

City and state:           District of Columbia            Robin M. Meriweather, United States Magistrate Judge
                                                                                    *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  22-sw-187 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A-1

**One Blue in color Apple iPhone XR, IMEI:357336099333889. (DEVICE 1).**

**<u>ATTACHMENT A-2</u>**

**One White in color, iPhone 11 Pro Max, IMEI: 353904107308203. (DEVICE 2)**

## ATTACHMENT A-3

**One black in Color Alcatel cell phone.    (DEVICE 3)**

## ATTACHMENT B

### PROPERTY TO BE SEIZED

1)      The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846 (drug trafficking offenses), 848 (Continuing Criminal Enterprise) and 18 U.S.C. §§ 924(c) and 924(j) (Possession of a Firearm in Furtherance of a Crime of Violence/Drug Trafficking and Discharge of a Firearm in Furtherance of a Crime of Violence/Drug Trafficking Crime Causing Murder) (collectively, the "Target Offenses"), including but not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data:

(i)      establishing or documenting the commission of the Target Offenses;

(ii)      identifying locations where the individual committed the Target Offenses, traveled to before and after the commission of the Target Offenses, and in preparation for the target offenses;

(iii)      reflecting the ownership and use of the items identified in Attachment A by the individual committing the Target Offenses;

(iv)      documenting meetings and communications between individuals committing one or more of the Target Offenses;

(v)      reflecting communications between the individual committing one or more of the Target Offenses and other individuals, discussing the commission of one or more of the Target Offenses;

(vi)      reflecting communications between the individual committing one or more of the Target Offenses and other individuals who may have assisted or provided support in the commission of one or more of the Target Offenses;

(vii)     containing photographs or video that would constitute evidence of a violation of the Target Offenses;

(viii)     documenting or containing evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of narcotics in violation of 21 U.S.C. § 841(a)(1), which would constitute evidence of one of the Target Offenses; and

(ix)     documenting or containing evidence of the purchase of items from the assets derived from the commission of a narcotics trafficking offense in violation of 21 U.S.C. § 841(a)(1), which would constitute evidence of one of the Target Offenses.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** | |
| **THREE DIGITAL DEVICES THAT ARE CURRENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF INVESTIGATION IN WASHINGTON, D.C.** | **Case No. 22-sw-187** |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Heang P. Ly, Special Agent, Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington, D.C., (herein "affiant") being duly sworn, depose and state the following:

### INTRODUCTION

1)      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of three cellphones that are currently in law enforcement possession, as described in Attachments A-1, A-2, and A-3 (incorporated herein by reference), and the extraction from that property of electronically stored information as described in Attachment B (incorporated by reference).

2)      I am "an investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a Special Agent (SA) with the FBI since December of 2014.   I am currently in the FBI's Washington Field Office (WFO), which is responsible for conducting investigations that target

1

large drug trafficking organizations.   From January 2016 to the present, I have been working on federal narcotics investigations and I have participated in several investigations that led to the arrest and conviction of multi-kilogram narcotics distributors. I have actively participated in investigations of criminal activity, including but not limited to drug trafficking.   During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating drug trafficking activities.   I have personally participated in investigations that have resulted in the arrest and convictions of numerous individuals responsible for drug trafficking.   I have been involved in the investigations of subjects involved in various crimes, to include the illegal possession and distribution of controlled dangerous substances, illegal possession of concealed handguns, and the possession of stolen handguns.   I have personally been involved in the execution of numerous search warrants, including narcotics-related and document-related warrants.   I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies.   In the course of conducting narcotic and criminal enterprise investigations, I have incorporated the use of the following investigative techniques: interviewing informants, cooperating witnesses, victims and subjects; handling informants; physical surveillance; consensual monitoring and recording both telephone and non-telephonic communications; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms and other contraband.   I have experience in debriefing defendants, informants, participants and various persons with direct experience with the methods used to distribute controlled substances. I also have experience in using confidential informants in furtherance of drug investigations.

3)        Through instruction, training, and participation in investigations, as well as through consultation with other agents and law enforcement personnel, I have become familiar with the manner and methods by which narcotics traffickers conduct their drug trafficking operations.

4)        Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for a cellphone, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth herein are not being relied upon in this affidavit in support of the warrant. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other agents and law enforcement officers, reports and data provided by other officers which I have read and reviewed, and, in part, upon information and belief. The sources of my information and belief include but are not limited to: a) oral and written reports regarding this and other investigations which I have received, directly or indirectly, from agents of the FBI, and other law enforcement officers; and b) physical surveillance conducted by your affiant and other agents and officers who have reported to me directly or indirectly.

### AFFIANT'S KNOWLEDGE, TRAINING, AND EXPERIENCE RELATING TO CELLULAR PHONES

5)        Based on your affiant's knowledge, training, and experience, a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.

6)        In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include but are not limited to storing names and phone

numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. In this capacity, your affiant knows that a cellular phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, audio and video recording device, and personal digital assistant (PDA), and can store information for long periods of time. Similarly, information that has been viewed via the Internet is typically stored for some period of time on the device. Even when a user deletes information from a cellular phone, it can sometimes be recovered with forensics tools.

7)      In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Your affiant also knows that those involved in criminal activities take, or cause to be taken, photographs of themselves, their associates, property derived from their criminal activities, and their products, on cellular telephones.

8)      Your affiant has consulted with forensic cellular phone examiners who regularly conduct examinations of cellular phones and has learned that conducting cellular phone examinations is a highly technical process using specific tools for which the examiners receive training.

## AFFIANT'S KNOWLEDGE OF CELLPHONES REGARDING THE TRAFFICKING OF NARCOTICS

9)      Based on your affiant's knowledge, training, and experience, and in the knowledge, training, and experience of other members of FBI, cellphones are tools of the narcotics trade. Narcotics traffickers communicate with customers, suppliers, and coconspirators via cellphones.

Narcotics traffickers use cellphones to arrange meetings, request narcotics, take narcotics orders, and arrange for coconspirators to obtain and distribute narcotics.   To avoid detection by law enforcement, drug traffickers commonly use more than one cellphone and often send text messages, rather than engage in oral communications. Specifically, as discussed further below, investigation has revealed that the targets of this investigations are using cellular telephones to further both the narcotics trafficking and laundering the of drug proceeds.

10)     Cellphones used by narcotics traffickers contain valuable information and evidence relating to their narcotics trafficking.   Such information consists of but is not limited to call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data. This information can: (i) reflect the preparation for, arrangement of, and commission of the trafficking of narcotics; (ii) identify locations where narcotics traffickers traveled to before and after transporting or selling narcotics; (iii) reflect the ownership and use of the cellphones by the narcotics traffickers; (iv) document meetings and communications between narcotics traffickers, their customers, associates, and coconspirators; (v) reflect communications between narcotics traffickers and other individuals, discussing the trafficking of narcotics; (vi) reflect communications between narcotics traffickers and other individuals who may have assisted or provided support in the trafficking of narcotics; (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of narcotics relating to the trafficking of narcotics; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of narcotics.

11)     Many cellphones have picture-taking devices on them.   My law enforcement training and experience indicates that drug-dealers like to take pictures or videos of themselves,

their drugs, the money made from selling drugs, and the persons with whom they work, that is, with whom they sell drugs.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

12)     The property to be searched is three separate cellular phones, identified as TARGET DEVICE 1, TARGET DEVICE 2, and TARGET DEVICE 3, collectively and referred to herein as the "TARGET DEVICES"; seized by law enforcement upon the arrest of Ray RIVERA-RUIZ (hereinafter referred to as "RIVERA-RUIZ") on April 15, 2021.   As set forth in Attachment A-1 through A-3, all three cellular phones are currently in possession of the FBI, at its secure facility located at 601 4th Street, Northwest, Washington, D.C.   Each cellular phone was given a unique property number in the FBI's evidence vault as it pertains to the FBI's ongoing investigation into this matter.

13)     Your affiant believes, further described *infra*, there is probable cause to believe the TARGET DEVICES contain evidence of 21 U.S.C. §§ 841(a)(1), 21 U.S.C. §§ 841(b)(1)(C) and 846 (drug trafficking offenses), as well as, evidence of identification, that would further establish the individuals who committed the target offenses (as described and detailed further in Attachment B, as incorporated herein).   Additionally, your affiant believes the TARGET DEVICES may contain evidence pertaining to the murder of Shantay BUTLER (hereinafter "BUTLER") and attempted murder of ALFONSO ORTIZ GUARDIOLA (hereinafter "GUARDIOLA") in violation of 21 U.S.C. § 848 (Continuing Criminal Enterprise) and 18 U.S.C. §§ 924(c) and 924(j) (collectively, the "Target Offenses").

## Case Background

16)     Your affiant believes, as further described below, members of a Puerto Rico-based drug trafficking organization (DTO), were shipping mail parcels containing controlled dangerous

substances, specifically kilogram quantities of cocaine, from Puerto Rico to a DTO based in Washington, D.C. and Maryland. The drug trafficking conspiracy began in October of 2019 and continued through at least April 15, 2021. As explained further below, RIVERA-RUIZ was involved in drug trafficking, and may have had knowledge in the planning or helped plan or direct the murder of Shantay BUTLER (hereinafter "BUTLER") and attempted murder of ALFONSO ORTIZ GUARDIOLA (hereinafter "GUARDIOLA").

17)    The Puerto Rico based DTO was led by RIVERA-RUIZ who supervised Nomar MEDINA-DIAZ, ("MEDINA-DIAZ"); Jann APONTE-RIVERA ("APONTE-RIVERA"); and Michael RIVERA-HERNANDEZ ("RIVERA-HERNANDEZ"), as well as other identified and unidentified individuals.

18)    On April 1, 2021, RIVERA-RUIZ, MEDINA-DIAZ, APONTE-RIVERA, and RIVERA-HERNANDEZ were indicted in United States District Court for the District of Columbia in a one-count indictment charging conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. Sections 841(a)(1), (b)(1)(A)(ii), and 846, *see* Case No. 21-cr-270 (JEB). RIVERA-RUIZ, MEDINA-DIAZ, APONTE-RIVERA, and RIVERA-HERNANDEZ have all since been arrested. On May 3, 2022, MEDINA-DIAZ, pleaded guilty to the sole count of the Indictment.

19)    On May 26, 2022, RIVERA-RUIZ, RIVERA-HERNANDEZ, and APONTE RIVERA were indicted in a four-count superseding indictment. RIVERA-RUIZ, RIVERA-HERNANDEZ, and APONTE-RIVERA were charged with one count of Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or more of cocaine. On count two, RIVERA-RUIZ was charged on one count charge of engaging in a Continuing Criminal Enterprise. On count three, RIVERA-HERNANDEZ and APONTE-RIVERA were charged with aiding and abetting

each other while engaging in the drug trafficking conspiracy and, did unlawfully, knowingly, and internationally cause the killing of an individual in furtherance of the continuing criminal enterprise described in count two. The final count of the superseding indictment charged RIVERA-HERNANDEZ and APONTE-RIVERA with discharging one or more firearms in furtherance of a drug trafficking offense which caused the death of Shantay BUTLER.

20)      The D.C./MD based DTO was led by Alfonso GUARDIOLA (GUARDIOLA); who supervised Emanuel SCOTT (SCOTT); Alonzo MCLAUGHLIN (MCLAUGHLIN); and Lorenzo BROOKS (BROOKS). GUARDIOLA, SCOTT, and MCLAUGHLIN have been apprehended, but BROOKS has not yet been located.

21)      Law enforcement continues to investigate the role of RIVERA-RUIZ, APONTE RIVERA, and RIVERA-HERNANDEZ, in the October 14, 2020, murder of Shantay BUTLER (BUTLER), GUARDIOLA's fiancé, and attempted murder of GUARDIOLA in Levittown, Puerto Rico.

22)      On August 26, 2020, Magistrate Judge G. Michael Harvey for the United States District Court District of Columbia signed a federal search warrant (Case No. 20-sc-2251) authorizing the collection of GPS data for cellular telephone 240-639-5929, believed, at that time, to be used by GUARDIOLA to facilitate narcotics trafficking activities described above.   Your affiant later learned that co-conspirator APONTE-RIVERA also used cellular telephone number 240-639-5929 in furtherance of the DTO's narcotics business.[1]   Within the affidavit for the search warrant signed by Judge Harvey, your affiant described PARCELS 1-5 to illustrate

---

[1] Your affiant believes APONTE-RIVERA began using 240-639-5929 close to the activation date – August 6, 2020. Your affiant bases this belief upon several factors: The Apple ID associated with 240-639-5929 is jann.aponte96@gmail.com; stored photos on 240-639-5929 include selfies of APONTE-RIVERA, as well as pictures of boarding passes with the passenger's name Jann Aponte and Jann Rivera – this information was determined by a cellular phone download authorized by search warrant 20-1079(M).   Additionally, GPS location data places 240-639-5929 in San Juan Puerto Rico when GUARDIOLA was known by your affiant to be in Maryland.

GUARDOLA's drug trafficking network and methods of narcotics trafficking.  Your affiant requests that the affidavit in Case No. 20-sc-2251 be incorporated herein by reference.

### Telephone Analysis

23)      During the course of the investigation, law enforcement was able to identify the phone numbers utilized by RIVERA-RUIZ, GUARDIOLA, MEDINA-DIAZ, RIVERA-HERNANDEZ, and APONTE-RIVERA. On a passport application, RIVERA-RUIZ provided a primary contact number as 939-268-2367 (hereinafter "x2367"), which is subscribed to Glorimar Rodriguez Saez (hereinafter "GLORIMAR"), who is also listed as the emergency contact of RIVERA-RUIZ on his passport application. Additionally, this number was provided to Delta Airlines on airline tickets purchased by RIVERA-RUIZ for travel from New York City to San Juan on September 13, 2020. APONTE-RIVERA and MEDINA-DIAZ also flew on the same Delta flight along with RIVERA-RUIZ on September 13. 2020, out of New York City to San Juan.[2]

24)      The phone number identified for MEDINA-DIAZ was identified as 939-235-9465 (hereinafter "x9465.") This number is subscribed to Gladys Figueroa. A search of law enforcement databases identified Gladys Figueroa as likely the mother of MEDINA-DIAZ. Additionally, this number was also provided to Delta Airlines on airline tickets purchased by MEDINA-DIAZ for the September 13, 2020 trip to NYC with RIVERA-RUIZ and APONTE-RIVERA.

25)      One of the phone numbers identified for APONTE-RIVERA was identified as 787-629-2727, (hereinafter "x2727.") This number is subscribed to Claudette Rivera, at FT9 Calle Luis Llorens Torres, Toa Baja, Puerto Rico. This number was provided to Spirit Airlines on a ticket

---

[2] This information was provided to law enforcement by Delta Airlines pursuant to a subpoena served to Delta Airlines on or about July 6, 2021.

purchased by APONTE-RIVERA for a September 10, 2020, flight from San Juan to Baltimore, Maryland.[3]   The address FT9 Calle Luis Llorens Torres, Toa Baja, Puerto Rico, was also provided to Spirit Airlines under the same ticket.

26)      One of the phone numbers identified for RIVERA-HERNANDEZ was identified as 787-226-8138 (hereinafter "x8138.") This number is subscribed to Liza Hernandez, at AQ11 Calle 17, Bayamon, Puerto Rico. This number was provided to Spirit Airlines by RIVERA-HERNANDEZ for round trip airline tickets for travel from October 11, 2020 through October 13, 2020, from San Juan to Baltimore, Maryland.   As described in 20-sc-3163, authorized by United States District Court for the District of Columbia Magistrate Judge Zia M. Faruqui, (incorporated by reference herein), frequent caller analysis indicated that during the period between June 17, 2020 – October 15, 2020, x2727 had approximately 401 activations with five known cellular phone numbers used by GUARDIOLA, approximately 323 activations with two other cellular phone numbers used by RIVERA-RUIZ, and approximately 50 phone activations with two cellular phone numbers used by SCOTT.

27)      Toll analysis identified RIVERA-RUIZ as having had frequent contact with co-conspirators APONTE-RIVERA, GUARDIOLA, MEDINA-DIAZ, and RIVERA-HERNANDEZ, using phone number x2367. Between October 1, 2020 and October 31, 2020, there were approximately 143 activations between RIVERA-RUIZ utilizing x2367 and MEDINA-DIAZ utilizing x9465; approximately 35 activations between RIVERA-RUIZ and APONTE-RIVERA utilizing x2727; approximately 2 activations between RIVERA-RUIZ and RIVERA-HERNANDEZ utilizing x8138; and 93 activations between RIVERA-RUIZ and GUADIOLA

---

[3] A FBI analyst were notified by Spirit Airlines representatives on September 8, 2020 about the upcoming flight. The notification included telephone number 787-629-2727 as the contact number for APONTE-RIVERA.

utilizing x3956, with 25 of those activations taking place on October 14, 2020, the day of the shooting.

### Homicide in Puerto Rico

28)      On October 13, 2020, APONTE-RIVERA was observed by surveillance units at BWI airport with RIVERA-HERNANDEZ and MEDINA-DIAZ.   All three individuals were observed by a U.S. Postal Inspection Service Inspector conversing in the gate area before boarding Spirit Airlines flight 3041 to Ft. Lauderdale, Florida.   At approximately 1:47 p.m. the Inspector observed APONTE-RIVERA, RIVERA-HERNANDEZ, and MEDINA-DIAZ hand their tickets to the gate agent at gate D-11 and enter the jetway to board the flight.   The surveillance was terminated at approximately 2:00 p.m.   After ending surveillance, the Inspector obtained a copy of the passenger manifest from Spirit Airlines employees confirming APONTE-RIVERA, RIVERA-HERNANDEZ, and MEDINA-DIAZ were passengers on flight 3041.

29)      A cooperating witness, CW2, stated that MEDINA-DIAZ, RIVERA-HERNANDEZ, and APONTE-RIVERA had traveled to Maryland to collect money owed to the Ray RIVER-RUIZ drug trafficking organization for prior cocaine shipments. CW2 also stated that a co-conspirator subsequently met with the MEDINA-DIAZ, RIVERA-HERNANDEZ, and APONT- RIVERA and provided them several thousands of dollars to bring back to Puerto Rico, to give to Ray RIVERA-RUIZ. According to CW2, GUARDIOLA was not permitted to leave Puerto Rico until the debt was paid.

30)      On October 15, 2020, FBI Special Agent (SA) Heang Ly was notified by San Juan USPIS Office of the Inspector General that on October 14, 2020, at approximately 8:40 pm (local time), GUARDIOLA and BUTLER were victims of a shooting in the Levittown area of Toa Baja, Puerto Rico.   BUTLER subsequently died from her injuries and GUARDIOLA was admitted to

a local hospital in critical condition, where he received treatment for serious injuries.   The San
Juan Police Department opened a homicide investigation into the shootings.   Your affiant believes
that RIVERA-RUIZ may have been involved in the ordering, or had prior knowledge, of the events
of October 14, 2020 ambush murder of BUTLER and severely wounding GUARDIOLA because
GUARDIOLA was not providing RIVERA-RUIZ proceeds from the sale of kilogram quantities
of cocaine in a timely manner.

**Search Warrant at CD 14 Calle Jose Sabater Toa Baja, Puerto Rico**

31)       Subsequent to RIVERA-RUIZ's arrest on April 15, 2021, law enforcement
conducted a court authorized search of his residence (21-524-M).   Upon searching the residence,
law enforcement seized several items including the TARGET DEVICES, multiple SIM cards,
USPS shipping boxes consistent with previously seized parcels containing kilogram quantities of
cocaine shipped from the Puerto Rico DTO to the Washington, D.C. DTO., USPS shipping labels,
and a USPS shipping receipt bearing tracking number EJ 372-657-744 located on top of the dresser
of RIVERA-RUIZ's bedroom (herein "PARCEL 744"). TARGET DEVICES 1 and 2 were located
in the bedroom of RIVERA-RUIZ where the receipt for PARCEL 744 was also located. TARGET
DEVICE 3 was located in another room in the residence.

32)       PARCEL 744 was subsequently retrieved from the mail stream by USPIS, and on
April 19, 2021, a court-authorized search warrant was obtained on PARCEL 744 (21-533-M).
Located inside PARCEL 744 was approximately 1040 grams of a white compressed substance that
field-tested positive for the presence of cocaine.

33)       During a post arrest interview, RIVERA-RUIZ admitted to knowing APONTE-
RIVERA.   RIVERA-RUIZ also admitted to having a cellular phone number for APONTE-

RIVERA stored on the TARGET DEVICE 1.   RIVERA provided pin code 272854 to unlock the TARGET DEVICE 1 and provided cellular phone number 939-206-6187 as the number he had for APONTE-RIVERA.   However, RIVERA-RUIZ refused to sign a consent to search the TARGET DEVICE 1.

**Cooperating Witness 1**

34)     A cooperating witness ("CW1") has provided information regarding the Puerto Rico DTO shipping numerous kilograms of cocaine to the mainland U.S., and the October 14, 2020 shooting. CW1, has a long-standing drug trafficking history, and was supplied cocaine by Javier GONZALEZ-OLIVERAS (GONZALEZ-OLIVERAS) and RIVERA-RUIZ throughout the course of the conspiracy which CW1 and others distributed in the D.C./Maryland area.

35)     On February 18, 2021, CW1 pled guilty to a one-count information charging conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and agreed that his relevant conduct was between 50 and 150 kilograms of cocaine in the District Court for the District of Columbia. In the summer of 2021, CW1 illegally obtained controlled substances and a cellular telephone while in custody. On November 18, 2021, CW1 plead guilty to an information, charging CW1 with Count One, conspiracy to distribute and possess with intent to distribute a detectable amount of Suboxone; Count Two, providing or possessing contraband in prison (suboxone); and Count Three, providing or possessing contraband in prison (cellular telephone) in the District Court for the District of Columbia. Additionally, CW1 has admitted to law enforcement that during interviews with them he has not been truthful at times about certain aspects on the drug conspiracy. Your affiant has corroborated a substantial amount of information provided by CW1 and believes that the facts contained in this affidavit regarding CW1 are accurate.

36) CW1 stated that from approximately the Summer of 2019, through February of 2021, GUARDIOLA obtained kilogram quantities of cocaine from RIVERA-RUIZ. CW1 also stated that RIVERA-RUIZ was one of the primary suppliers for GUARDIOLA along with GONZALEZ-OLIVERAS and would frequently send two to four kilograms of cocaine at a time in separate packages. GUARDIOLA, with the help of SCOTT, MCLAUGHLIN, and BROOKS would sell cocaine in D.C./MD for their own benefit as well as on behalf of RIVERA-RUIZ and GONZALEZ-OLIVERAS because the sale price of cocaine was much higher in that area than in Puerto Rico. When packaged by RIVERA-RUIZ, the cocaine would be concealed in towels or clothing. CW1 was shown examples of parcels with kilograms of cocaine wrapped in white towels which were seized containing cocaine, and CW1 confirmed that those kilograms were sent by RIVERA-RUIZ due to the way they were concealed in the towels.

37) CW1 also explained that RIVERA-RUIZ had access to a money-laundering network located around New York City. RIVERA-RUIZ would provide GUARDIOLA with a contact in New York who would in turn send him to an address in New York or New Jersey to drop off drug proceeds.

**Cooperating Witness 2**

38) On May 25, 2021, an interview with one of the CWs (hereinafter CW2 [4]), highlighted a significant conversation via Facetime between SCOTT, RIVERA-RUIZ, and APONTE-RIVERA in which APONTE-RIVERA stated, "You see what we do, Papi?" to SCOTT.

39) CW2 believed APONTE-RIVERA's comments were in relation to BUTLER and GUARDIOLA's shooting.   CW1 could not recall the exact date of the FaceTime conversation. An analysis of SCOTT's phone revealed a FaceTime conversation that occurred on October 30,

---

[4] On June 17, 2021 CW2 pled guilty conspiracy to distribute five or more kilograms of cocaine and using and possessing a firearm during a drug trafficking event in violation of Title 18 § 924(c) and Title 21 USC § 846.

2020 with a contact saved as "JP/Roc" using phone number 787-629-2727, known to be used by APONTE-RIVERA as referenced *supra*, and another Puerto Rican number, 787-975-6723 (hereinafter x6723), which did not have a subscriber, based on phone records.

40)     On October 21, 2021, CW2 explained under oath, the details regarding the conversation involving SCOTT, RIVERA-RUIZ, and APOINTE-RIVERA. CW2 also provided investigators information pertaining to phone contacts contained on a phone with cellular phone number 202-642-7200, used by SCOTT throughout the investigation.   The photograph below depicts a screenshot of some of SCOTT's phone contacts from October 30, 2020.   There is a FaceTime conversation with "JP/Roc" and the x6723 number, on October 30, 2020, in the middle of the screenshot.

41)     Based on the interviews with multiple cooperating witnesses, including the information provided by CW2, a review of data gathered throughout this investigation, including subpoena information and phone data, your affiant believes that SCOTT had a conversation with RIVERA-RUIZ and APONTE-RIVERA via FaceTime on October 30, 2020. During one of these conversations APONTE-RIVERA referenced the murder of BUTLER and shooting of GURARDIOLA on October 14, 2020 by stating, "You see what we do, Papi?".

Screenshot of CW1's phone showing contact with "JP/Roc"



## METHODS TO BE USED TO SEARCH CELLPHONES

42)      Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this investigation and in the forensic examination of digital devices, such as, cellphones, I know that:

43)      Searching digital devices, such as cellphones, can be an extremely technical process, often requiring specific expertise, specialized equipment, and substantial amounts of time, in part because there are so many types of digital devices and software programs in use today. Digital devices – whether, for example, desktop computers, mobile devices, or portable storage devices – may be customized with a vast array of software applications, each generating a particular form of information or records and each often requiring unique forensic tools, techniques, and expertise.  As a result, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched, and to obtain specialized hardware and software solutions to meet the needs of a particular forensic analysis.

16

44)      Digital data is particularly vulnerable to inadvertent or intentional modification or destruction.   Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data.   Recovery of "residue" of electronic files from digital devices also requires specialized tools and often substantial time.   As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is often essential to conducting a complete and accurate analysis of data stored on digital devices.

45)      Further, as discussed *supra*, evidence of how a digital device has been used, the purposes for which it has been used, and who has used it, may be reflected in the absence of particular data on a digital device.   For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device.   Evidence of the absence of particular data or software on a digital device is not segregable from the digital device itself. Analysis of the digital device as a whole to demonstrate the absence of particular data or software requires specialized tools and a controlled laboratory environment, and can require substantial time.

46)      Based on all of the foregoing, I respectfully submit that searching any digital device for the information, records, or evidence pursuant to this warrant may require a wide array of electronic data analysis techniques and may take weeks or months to complete.   Any pre-defined search protocol would inevitably result in over-or under-inclusive searches, and misdirected time and effort, as forensic examiners encounter technological and user-created challenges, content, and software applications that cannot be anticipated in advance of the forensic examination of the

17

devices.   In light of these difficulties, your affiant requests permission to use whatever data analysis techniques reasonably appear to be necessary to locate and retrieve digital information, records, or evidence within the scope of this warrant.

47)      Because forensic examiners will be conducting their search of the digital devices in a law enforcement setting over a potentially prolonged period of time, I respectfully submit good cause has been shown, and therefore request authority, to conduct the search at any time of the day or night.

## CONCLUSION

48)      Based upon the above-referenced facts, your affiant asserts that there is probable cause to believe that Devices 1-3 (as described in Attachments A-1, A-2, and A-3 and incorporated herein by reference) contain evidence of the Target Offenses, as further described in Attachment B and incorporated herein by reference).

49)       Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.   I further request that the Court permit the search warrant to be executed at any time given that the Devices are contained on the premises of an FBI secured facility.

Respectfully submitted,

_____

HEANG P. LY
Special Agent
Federal Bureau of Investigation


Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 16, 2022.



_____
HONORABLE ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE